**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MARCIA BRYSON,** ) | **CASE NO.1:07CV724** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | |
| ) | |
| **MIDDLEFIELD VOLUNTEER FIRE** ) | |
| **DEPARTMENT, INC., et al.,** ) | **OPINION AND ORDER** |
| ) | |
| **Defendants.** ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion of Defendants Middlefield Volunteer Fire Department, Inc. ("Fire Department") and former Chief Scott Anderson to Dismiss Plaintiff Marcia Bryson's federal claims under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 6.) Also before the Court is Defendants' Motion for Partial Summary Judgment as to Plaintiff's federal claims. (ECF Nos. 6, 11.) For the following reasons, the Court DENIES Defendants' 12(b)(1) Motion to Dismiss and GRANTS Defendants' Motion for Partial Summary Judgment.

**I. BACKGROUND**

Plaintiff's Amended Complaint alleges the following violations of both Title VII of the

Civil Rights Act of 1964 ("Title VII") and Ohio law: hostile work environment sexual harassment, quid pro quo sexual harassment, and retaliation.  (Am. Compl. ¶ 1.)  Plaintiff also alleges wrongful discharge in violation of Ohio law.  (Am. Compl. ¶ 1.)

The primary dispute concerns the numerosity requirement of Title VII.  In order to be subject to Title VII, the Fire Department must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  42 U.S.C. § 2000e(b).  The parties agree on the years in question: 2002 to 2007.[1]  The parties also agree that Plaintiff, herself, was an employee.  The parties dispute the Title VII employment status of three groups: (1) twenty-one volunteer firefighters who received a one-time Longevity Fund payment in January 2003; (2) thirteen paid firefighters hired between September 3, 2007 and December 14, 2007; and (3) the dozens of volunteer firefighters who received certain benefits.

During initial briefing, the parties argued for different tests to determine whether certain individuals were employees under Title VII.  Plaintiff sought application of the common law agency test, which examines the employer's degree of control over the putative employee.  Defendants argued for the "economic realities" test, which assesses the putative employee's economic dependence on the employer.  While the Sixth Circuit prefers the common law agency

---

[1] The claims in Counts I and II allegedly occurred in 2003 and 2004.  The claims in Count III allegedly occurred in 2005, 2006, and 2007.  The statutory language, "current or preceding calendar year," refers to the years of the alleged violations, coupled with the year before the alleged violations.  *Guadagno v. Wallack Ader Levithan Ass'n*, 932 F. Supp. 94, 96 (S.D.N.Y. 1996).

test to distinguish employees from *independent contractors*,[2] the Sixth Circuit has not set forth the appropriate standard to distinguish employees from *volunteers*. However, the Sixth Circuit has emphasized the similarities between the two tests.[3] In fact, sister circuits have used elements of both tests to determine the employment status of volunteers: "Whether an individual is an employee . . . is properly determined by analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test . . . ." *Haavistola v. Cmty. Fire Co.*, 6 F.3d 211, 220 (4th Cir. 1993). Neither test is dispositive in the context of nominal volunteers because both tests assume the individuals were hired in the first place.[4]

To solve this problem, several circuits employ a two-step employment status test for volunteers. *See United States v. City of New York*, 359 F.3d 83, 92 (2d Cir. 2004); *Seattle Opera Ass'n v. NLRB*, 292 F.3d 757, 762 (D.C. Cir. 2002); *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998); *Haavistola*, 6 F.3d at 221-22; *Graves v. Women's Prof'l Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990). First, these courts determine whether there is adequate remuneration. This first prong can be dispositive of the case. *O'Connor*, 126 F.3d at

---

[2] *Shah v. Deaconess Hospital*, 355 F.3d 496, 499 (6th Cir. 2004) ("[W]e have made it clear that we prefer the common law agency analysis.").

[3] "In practice there is not much difference between the two standards–both consider the entire relationship, with the most important factor being the 'employer's ability to control job performance and employment opportunities of the aggrieved individual.'" *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998) (quoting *Simpson v. Ernst & Young*, 100 F.3d 436, 442 (6th Cir. 1996)).

[4] "The common feature shared by both the employee and the independent contractor is that they are both 'hired parties,' and thus, a prerequisite to considering whether an individual is one or the other under common-law agency principles is that the individual has been hired in the first instance." *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997).

115-16 ("Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist . . . ."). Second, if adequate remuneration is present, the courts proceed to apply traditional employment status tests, such as the common law agency test.

On March 26, 2008, the Court adopted this bifurcated approach and held that "there exists an antecedent requirement of remuneration" before conducting traditional common law analysis. (ECF No. 17 at 3.) The Court permitted narrow discovery to further explore the level of benefits received by certain members of the Fire Department. The Court noted that it would revisit Defendants' Motion to Dismiss and Motion for Partial Summary Judgment following discovery. (ECF No. 17 at 6.). These Motions have been fully briefed and are ripe for review.

## II. DISCUSSION

**Rule 12(b)(1) Motion to Dismiss**

Defendants' 12(b)(1) Motion to Dismiss argues that the Court lacks subject matter jurisdiction because the Fire Department does not have the requisite fifteen employees to be subject to Title VII. In 2006, the Supreme Court plainly stated that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); *Thomas v. Miller*, 329 Fed. App. 623, 626 (6th Cir. 2009) (holding that a numerical threshold is an essential element of a claim). The numerical qualification of Title VII does not affect federal subject matter jurisdiction. *Arbaugh*, 546 U.S. at 503. Therefore, Defendants' Motion to Dismiss is denied.

**Motion for Partial Summary Judgment**

Pursuant to the Court's March 26, 2009 Order, the parties have conducted discovery and

fully briefed the issue of remuneration.  The first prong of the two-step employment status test asks whether certain volunteer firefighters received sufficient remuneration to be considered employees under Title VII.  "Compensation by the putative employer to the putative employee *in exchange for his services* is not a sufficient condition, but it is an essential condition to the existence of an employer-employee relationship."  *Graves*, 907 F.2d at 74 (emphasis added).  *See also O'Connor*, 126 F.3d at 116.  Remuneration need not be salary.  *City of New York*, 359 F.3d at 92 (citing *Pietras v. Board of Fire Comm'rs*, 180 F.3d 468, 473 (2d Cir. 1999)).  A salary is not required "as long as he or she gets numerous job-related benefits."  *Pietras*, 180 F.3d at 473.  Remuneration must "consist of 'substantial benefits not merely incidental to the activity performed.'"  *City of New York*, 359 F.3d at 92 (quoting *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 126 (2d Cir. 2002)).

Summary judgment is appropriate when there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The circuits disagree whether adequacy of remuneration is a question of fact or a matter of law.  The Fourth Circuit held: "The district court must leave to a factfinder the ultimate conclusion whether the benefits represent indirect but significant remuneration . . . or inconsequential incidents of an otherwise gratuitous relationship . . . ."  *Haavistola*, 6 F.3d at 222.  While *Haavistola* remains the seminal opinion, several courts have tweaked the Fourth Circuit's holding.

For instance, the Second Circuit held: "We conclude, in accord with *Haavistola*, that a non-salaried volunteer firefighter's employment status under Title VII is a fact question when that firefighter is entitled to significant benefits."  *Pietras*, 180 F.3d at 473.  Therefore, the

Second Circuit requires, as an initial matter, evidence of "indirect but significant remuneration." *Id.* (quoting *O'Connor*, 126 F.3d at 116). If the court finds "significant remuneration," then the factfinder decides whether the significant remuneration rises to the level of employee status. *Pietras*, 180 F.3d at 473.

Other courts have found remuneration insufficient as a matter of law. The Tenth Circuit held: "[I]solated payments are insufficient to establish employment relationships that would justify counting [Plaintiffs] towards the requirement of 'fifteen or more employees.'" *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222*, 297 F.3d 1146, 1152 (10th Cir. 2002). Similarly, the United States District Court for the District of Delaware found that compensation given to volunteer firefighters did not rise to the level of employment status, despite benefits such as a pension system, discounts, and line-of-duty benefits. *Tawes v. Frankford Volunteer Fire Co.*, No. 03-842, 2005 U.S. Dist. LEXIS 786, at *12-17 (D. Del. Jan. 13, 2005). Finally, the United States District Court for the Southern District of Ohio refused to grant employment status to an individual as a matter of law. *Neff v. Civil Air Patrol*, 916 F. Supp. 710, 715 (S.D. Ohio 1996). Despite discounts and educational opportunities, the court held that "[Plaintiff] has not created a genuine issue of material fact as to whether she was an employee within the protection of the statute."[5] *Id.*

### 1. Fire Department's Employees and Volunteers

Depending on the year, between 2002 and 2007, the Fire Department retained between four and five "payrolled" employees. These positions included Chief, Assistant Chief,

---

[5] While the district court in *Neff* ostensibly applied the "economic realities" test, the court's decision turned on the issue of remuneration.

Treasurer, Secretary, and Administrative Assistant.  In 2007, four trustees were each paid $4,200 for their services to the Fire Department.  Defendants do not contest the employments status of these "payrolled" employees and trustees.  (ECF No. 21 at 3.)  In 2007, the Fire Department retained eight of these undisputed employees.[6]

### A. Longevity Fund One-Time Payment

In January 2003, the Fire Department provided Longevity Fund payments to twenty-one volunteer firefighters.  (ECF No. 21 at 4.)  The Longevity Fund was originally designed as a retirement pension.  Prior to 2003, the Fire Department administered the Longevity Fund by making payments to members who served at least fifteen years and reached age sixty-five.  (ECF No. 21 at 4.)  The fund was dissolved on January 2, 2003.  (ECF No. 21 at 4.)  At that time, the Fire Department paid $15,000 to six volunteers and $10,000 to fifteen volunteers, depending on their length of service.  Service to the Fire Department after January 2, 2003 did not result in any Longevity Fund benefit.  (ECF No. 10, Ex. 1.)

Other courts that have analyzed similar pension systems have found them to be inadequate remuneration for Title VII purposes.  *Tawes*, 2005 U.S. Dist. LEXIS 786, at *15-16; *Keller v. Niskayuna Consol. Fire. Dist. 1*, 51 F. Supp. 2d 223, 231-32 (N.D.N.Y. 1999).  In *Tawes*, volunteer firefighters were entitled to pensions if they contributed $60 per year, served ten years, and reached age sixty.  *Tawes*, 2005 U.S. Dist. LEXIS 786, at *15.  The court held that the pension benefit did not support a finding of employment: "As to the receipt of the pension itself, . . . this benefit too is minor, when viewed in the context of remuneration ordinarily

---

[6] The Fire Department retained four W-2 employees and four trustees in 2007.  (ECF No. 22 at 5.)

7

associated with employment." *Id.* at 16.

Similarly, in *Keller*, volunteer firefighters with sufficient years of service were entitled to a financial benefit upon reaching age fifty-five. *Keller*, 51 F. Supp. 2d at 231. The *Keller* court emphasized that the pensions were not guaranteed and were not provided in a contemporaneous fashion to the service provided. *Id.* at 232. According to the court: "[T]he service awards do not constitute the sort of guaranteed 'remuneration' which establishes an 'employer-employee' relationship." *Id.* The court concluded: "[B]ecause that benefit is not a guarantee of compensation for work performed, this Court finds that it cannot be considered 'compensation.'" *Id.*

Here, as Defendants note, the Longevity Fund dissolution payment amounted to between $268 and $385 per year of service. (ECF No. 21 at 4.) The Longevity Fund was not guaranteed, in that a volunteer firefighter would forfeit the benefit if he did not meet the required years of service. Furthermore, of the twenty-one recipients of the Longevity Fund payment, only two were active volunteers. (ECF No. 22, Ex. C.)

The Longevity Fund one-time payment does not constitute adequate compensation to constitute a "hire." To find otherwise would render nineteen "retired" volunteer firefighters "employees." Even assuming the two "active" recipients of the pension benefit were employees at the time of payment in 2003, the Fire Department would still only have between six and seven Title VII employees in 2003. Payment ranging from $268 to $385 per year does not amount to the "significant remuneration" necessary to create employment status.

### B. Thirteen Firefighters Hired in 2007

In 2007, the Fire Department hired thirteen[7] firefighters, who earned between $7.00 and $7.10 per hour.  (ECF No. 22, Ex. E-7.)  The start dates of these paid firefighters were staggered between September 3, 2007 and December 14, 2007.  Although several of these "payrolled" firefighters previously served as volunteers, the longest any member of this group worked as a "payrolled" firefighter in 2007 was seventeen weeks.  (ECF No. 22 at 20.)  If these thirteen paid firefighters were "employees" in 2007, then Plaintiff could maintain her Title VII claims occurring in 2007.

Defendants contend that the thirteen paid firefighters do not count toward the fifteen-employee threshold because they did not work for the required twenty weeks in any year in question.  (ECF No. 21 at 3.)  Plaintiff counters that the twenty-week requirement is irrelevant during this initial remuneration stage: "[T]he antecedent remuneration test seeks to ascertain simply whether there has been sufficient remuneration for there to be an initial hiring."  (ECF No. 22 at 12.)

Assuming these waged firefighters were adequately remunerated and hired, they would not render the Fire Department a Title VII employer.  The statute only applies to "employers" who have "fifteen or more employees for each working day in each of twenty or more calendar weeks" during the relevant time frame.  42 U.S.C. § 2000e(b).  At most, these paid firefighters worked for seventeen weeks during 2007, the last year in question.  The Court is mindful of the fact that a number of these thirteen new hires previously volunteered for the Fire Department.  However, as the Court notes below, the volunteer members did not receive the sort of significant

---

[7] The fourteenth firefighter hired was also the Assistant Chief and therefore, was already counted as a "payrolled" employee.  (ECF No. 22, Ex. E-7.)

9

remuneration that would render them employees.

### C. Other Volunteer Members

Having dealt separately with the volunteers receiving a pension payment and the thirteen "payrolled" firefighters, the Court now examines the compensation received by the volunteer members. It is uncontested that the volunteer firefighters received no salary or other wages. However, the volunteer members were provided insurance coverage, including Workers' Compensation and an Emergency Responders policy in the event of serious injury or death in the line of duty. (ECF No. 22 at 8.) In addition, the Fire Department provided gift cards to the volunteer firefighters. (ECF No. 22 at 8.) According to the Fire Department, with the exception of one year, these gift cards never exceeded $300. (ECF No. 21 at 4.) Volunteer members have access to the Fire Department's facilities and equipment for personal use. (ECF No. 22 at 10.) Finally, the Fire Department pays for periodic training for the volunteer members. (ECF No. 22 at 10.)

According to the Second Circuit: "We conclude, in accord with *Haavistola*, that a non-salaried volunteer firefighter's employment status under Title VII is a fact question when that firefighter is entitled to significant benefits." *Pietras*, 180 F.3d at 473. The Court adopts the Second Circuit's reading of the *Haavistola* line of cases. "Title VII limits liability to employers with fifteen or more employees, . . . 'because Congress did not want to burden small entities with the costs associated with litigating discrimination claims.'" *Wathen v. GE*, 115 F.3d 400, 406 (6th Cir. 1997) (quoting *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587 (9th Cir. 1993)). Examining the briefs, the parties do not dispute the compensation received by the volunteer firefighters. The parties only dispute whether this compensation amounts to employment status.

Faced with similar volunteer firefighter compensation, the court in *Tawes* found that a pension system, discounts, and line-of-duty benefits did not constitute adequate remuneration.  *Tawes*, 2005 U.S. Dist. LEXIS 786, at *14-16.  Here, the insurance coverage, gift cards, facility access, and training do not constitute significant benefits that would raise a factual issue for the jury.  The Court finds that the Middlefield volunteer firefighters are not employees under Title VII.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED and their Motion for Partial Summary Judgment as to Plaintiff's federal claims is GRANTED.  (ECF No. 6.)  In light of this ruling, the Court is left with Plaintiff's state law claims for hostile work environment sexual harassment, quid pro quo sexual harassment, retaliation, and wrongful discharge.  The Court declines to exercise supplemental jurisdiction over these pendent state law claims.  Therefore, the case is dismissed.

**IT IS SO ORDERED.**


Date: December 14, 2009                               S/Christopher A. Boyko
                                                     **CHRISTOPHER A. BOYKO**
                                                     **UNITED STATES DISTRICT JUDGE**